UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT PIKEVILLE

CIVIL ACTION NO. 04-437-DLB

VICKY HAMILTON                                                                              PLAINTIFF

vs.                              **MEMORANDUM OPINION & ORDER**

JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION                                          DEFENDANT

*******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Vicky Hamilton filed an application for Supplemental Security Income (SSI) payments on February 19, 2003. (Tr. 48-52)  Plaintiff, who was 39 years old at the time of the hearing, has a high school education.  She alleges a disability onset date of February 17, 2003, due to nerve problems and panic attacks, nervousness, anxiety, depression, hip and leg pain, seizures and migraine headaches. (Tr. 52)  Her application was denied initially (tr. 28-31) and on reconsideration (tr. 33-34).  Plaintiff then requested a hearing before an administrative law judge, which hearing was held on May 11, 2004, in Prestonsburg, Kentucky. (Tr. 221-45) By written decision of June 23, 2004, the ALJ ruled

that Plaintiff was not under a disability and so was not eligible for SSI payments. (Tr. 11-18) This decision was approved by the Appeals Council on December 1, 2004. (Tr. 4-6)

The instant action was filed on December 13, 2004. It has now culminated in cross motions for summary judgment.

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, or combination thereof, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last

step, the burden of proof shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff has never engaged in substantial gainful activity. (Tr. 12, 17)  At Steps 2 and 3, the ALJ found that Plaintiff has severe impairments of depression and migraine headaches. (Tr. 13, 17)  The ALJ concluded, however, that Plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment found in Appendix 1 to Subpart P of Regulations No. 4.  (*Id.*)

At Step 4, the ALJ found that Plaintiff had the physical residual functional capacity (RFC) to perform a significant range of work at the medium exertion level, being able to lift and carry up to fifty pounds occasionally and twenty-five pounds frequently. Nonexertionally, she must have little interaction with the public and infrequent interaction with co-workers or supervisors, and should not be expected to work in jobs with production quotas. (Tr. 16, 17)

Because Plaintiff has no past relevant work, the ALJ therefore proceeded to the final step of the sequential evaluation.  At Step 5, the ALJ found that there are jobs existing in significant numbers in the national economy at or below the medium exertion level that Plaintiff could perform consistent with her RFC, including laundry worker or kitchen helper at the medium level, greenhouse worker or cleaner at the light level, and clerical worker or filling machine operator at the sedentary levels. (Tr. 17, 18)  This conclusion resulted from testimony by a vocational expert ("VE"), in response to hypothetical questions involving a person of Plaintiff's age, education, past relevant work experience, and RFC. (Tr. 241-44)

3

**C.     Analysis**

Plaintiff's sole contention on appeal is that the hypothetical question given by the ALJ to the VE did not accurately portray her impairments and therefore cannot serve as substantial evidence in support of the ALJ's findings. Plaintiff submits that the ALJ's RFC is flawed and consequently that the hypothetically based thereon is infirm. More particularly, Plaintiff takes issue with the ALJ's failure to expressly include in her RFC each "moderately limited" finding noted by state non-examining consultant Ana Demaree. (Tr. 144)

To constitute reliable vocational evidence, hypothetical questions posed by an ALJ to a VE must include those limitations that accurately portray a claimant's physical and/or mental impairments. *Webb v. Comm'r of Social Security,* 368 F.3d 629, 633 (6th Cir. 2004); *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). In this case, the ALJ determined that Plaintiff retained the RFC to perform medium level work "limited by the need to have little interaction with the public and infrequent interaction with co-workers or supervisors, and should not be expected to work in jobs with production quotas." (Tr. 16) The ALJ noted this determination as being consistent with the state agency medical consultants. (*Id.*)

The record contains treatment records from Mountain Comprehensive Care for periodic visits over an approximate five-year period. (Tr. 182-213, 215-20) Dr. Demaree was provided with these records and prepared a Psychiatric Review Technique (tr. 148-61) and a Mental Residual Functional Capacity Assessment (tr. 143-47). In it she remarked that Plaintiff was "not significantly limited" in most areas. However, with respect to Plaintiff's ability "to complete a normal workday and workweek without interruptions from

4

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, ability to interact appropriately with the general public, and ability to respond appropriately to changes in the work setting," she remarked that Plaintiff was moderately limited. (Tr. 144) On reconsideration the state agency requested another Psychiatric Review Technique (tr. 163-76) and Mental Residual Functional Capacity Assessment (tr. 177-80) be done by Dr. Jay Athy, who affirmed the earlier determinations by Dr. Demaree.

Apparently Plaintiff is of the belief that in order to be valid, the ALJ's RFC must repeat verbatim those areas noted as being "moderately limited" by Dr. Demaree. Such is not the case. Residual functional capacity is determined by the ALJ, not dictated by medical sources. 20 C.F.R. § 416.946; *Clinker v. Apfel,* 2000 WL 1234325 (6th Cir.)(rejecting argument that ALJ erred by "creating" his own RFC and noting the relevant question is "whether the ALJ's assessment was supported by substantial evidence"). It reflects the most a claimant can do given her impairments. Its determination is within the exclusive province of the ALJ.

In the case at bar, Plaintiff's contention is belied by that of which she is already aware – the additional comments by Dr. Demaree. Dr. Demaree unequivocally states on her assessment that Plaintiff is "not preclude[d] [from] completion of routine tasks in a non-public setting with minimal public exposure." (Tr. 145) This dictation was also subsequently adopted by Dr. Athy in his review on reconsideration. (Tr. 179) In questioning the VE by way of hypothetical couched in terms of Plaintiff's RFC, the VE was asked to

> assume a hypothetical individual the claimant's same age, education, and background as just been described here today. Let's assume a hypothetical – that this hypothetical individual could work at, oh, let's say the medium

> level, and the lower levels.  Let's assume that this individual would have a moderate reduction in concentration due to medications and so on.  By moderate I mean would be limited to simple, non-complex tasks; and that this indivual further probably would need to work in an environment where there was not a lot of contact or little or no contact with the public, infrequent contact with supervisors and coworkers.  Given those limitations would there be jobs in the regional or national economy for such an individual?

The VE responded in the affirmative, identifying jobs of kitchen helper or laundry worker at medium level, nursery worker or cleaner at the light level, and clerical work or filling machine operator at the sedentary level. (Tr. 241, 243) In response to the ALJ's follow-up inquiry, the VE also testified these particular jobs were offered because they involve little public or coworker interaction, nor would there typically be a production quota at these particular types or levels of jobs. (Tr. 242-43)

The ALJ's questioning adequately depicted the limitations and functional capacity as determined by her and, therefore, provides proper vocational testimony upon which the ALJ could rely in determining disability.  Since the RFC reflected the ALJ's conclusions about Plaintiff's overall mental and physical functional capabilities, appropriately formulated based upon the medical and other evidence of record, nothing further was required.  The ALJ acted within her authority and discretion in determining how to interpret a moderate limitation on completion of a normal workday and workweek at a job requiring consistent pace without excessive rest periods.  That is, since Dr. Demaree also opined Plaintiff could complete routine tasks in a non-public setting, it was reasonable for the ALJ to interpret this by limiting the number of available jobs generally to only those positions involving little public/coworker contact and no specific production quotas, to adjust for this "moderate limitation."  The ALJ is permitted to and should review and interpret the medical evidence, including Dr. Demaree's conclusions and opinions.  Yet a judge's findings are not required

to mirror them. Substantial evidence is not lacking because an RFC fails to parrot each medical source remark, as long as the RFC is consistent overall with the opinions expressed by the doctor(s). Dr. Demaree expressed that Plaintiff could work if she had limited interaction with others and no quotas, and the ALJ's RFC and questioning of the VE are consistent with the doctor's opinions, which is all that is required.

### III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #9) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #11) is hereby **GRANTED**.

A judgment affirming this matter will be entered contemporaneously herewith.

Dated this 2nd day of March, 2006.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-04-437-HamiltonMOO.wpd